### THE PEOPLE *against* ANDERSON,

A *bona fide* finder of an article *lost*, as a trunk containing goods, lost from a stage coach and found on his own use the

THE prisoner was convicted at the last court of *oyer* and *terminer*, &c., held in the county of *Otsego*, of a felony in stealing the highway, is not guilty of *larceny* by any subsequent act, in secreting or appropriating to article found.

a trunk. It appeared in evidence, at the trial, that the trunk was lost from a stage coach in the highway, and was there, afterwards, found by the prisoner, who took and carried it away. The counsel for the prisoner at the trial contended, that property lost or abandoned by the owner, and found by another, was not the subject of larceny, and that, therefore, the prisoner ought to be acquitted.

ALBANY,
August, 1817.

THE PEOPLE
v.
ANDERSON.

The *Chief Justice* reserved the question; and charged the jury, that whether the prisoner could be guilty of stealing property thus found in the highway was a question of law reserved for the court, on which the jury were not to pass: but he directed them further, that if they should be of opinion that the prisoner *first* took the trunk with *intent* to steal it, they ought to convict him; and that, in coming to that conclusion they had a right to take into consideration the subsequent conduct of the prisoner, in relation to the property, as well as all the other circumstances of the case. The jury, by their verdict, found the prisoner *guilty*. The prisoner was brought up on *Habeas Corpus*, to receive judgment, and a case containing the facts above stated was handed to the court.

*Seely* and *Starkweather*, for the prisoner. It is laid down in all the books on the subject, that the *finder* of goods, who subsequently appropriates them to his own use, is not guilty of felony. *Coke** says, "that, if a man finds goods, and conceal or deny them, it is no felony:" that it is essential to constitute larceny, that the *taking* must be *felonious, id est, cum animo furandi*: "that if one lose his goods, and another find them, though he convert them *animo furandi*, to his own use, yet it is no larceny, for the first taking is lawful."† This law is recognised by all the subsequent writers on the subject; not a single case to the contrary is to be found.‡ *East*, the last writer on crown law, says, "if one finds a horse in the highway, which he takes and carries away, it is no felony; although it may be attended with all the circumstances which usually prove a taking with a felonious intent; such as denying or secreting it."§

This is not a case of *constructive* felony; as where a person applies to the owner to get possession of a chattel, for a certain specific purpose, and then takes and converts it to his own use.

* 3 *Inst.* 98. 107.
*Butler's Case,* 28
*Eliz.*

† 3 *Inst.* 108.
22 *Ass* pl. 99.
28 *Edw* 3 cor.
265.

† *Hale, P. C* 61
—67. 1 *Hawk.*
ch. 33. s. 3. 3
*Bac. Abr* 130.
*Felony,* (B.)
*M'Nally's Ev.*
586. *Kelyng,* 24.

§ 2 *East, C. L.*
663, 664.

*Van Buren*, (attorney-general,) contra.    It is from 22 *Assizes,* that the *dictum* of Lord *Coke* is derived, and which has been adopted by *Hale*, *Hawkins*, and *East*.    But the cases there found are those of *treasure trove*, and *waif*, in which the law presumes the property to be derelict.    If a person comes into the casual possession of goods lost, he is not considered as taking them feloniously, unless the jury are satisfied that the party takes them up, with an intent to appropriate them to his own use.    It is the *intent* with which the act of taking is done, that makes it felony or not; and it is the peculiar province of the jury to judge of that intent.    In *Pear's case*, which underwent great discussion, the prisoner obtained a horse under pretence of hiring it for a day, and immediately afterwards sold it, this was held to be *felony*, the jury having found that the prisoner hired the horse *animo furandi*.\*    Here the jury, by their verdict, have found that the prisoner took up the trunk *animo furandi*, or with intent to convert it to his own use.

* 1 *Leach C. L.* 253 , 108    2 *East, Cr. L.* 685, 686.

.SPENCER, J., delivered the opinion of the court.    The prisoner was convicted at the last court of *oyer* and *terminer* and *gaol delivery*, held in and for the county of *Otsego*; and a question of law having arisen on the trial, sentence was respited, and he has now been brought up on *Habeas Corpus*, to receive the judgment of this court.

On the trial, it came out in proof, that the articles for the stealing of which the prisoner was indicted, were contained in a trunk, and that he found this trunk on the highway.    The court below instructed the jury, that if the prisoner took the trunk with intention to steal it, they ought to find him guilty, and that in determining that question they had a right to take into consideration the prisoner's subsequent conduct, as well as all the circumstances of the case.

We assume it as an undisputed fact, that the prisoner found the trunk *bona fide*, and, consequently, that it had been lost by its proprietor; and we proceed on the ground, that if any subsequent embezzlement of the contents of the trunk would make the act a larceny of those articles, that then the conviction is correct.    But the court are of the opinion, that the *bona fide* finder of a lost article, or of a lost trunk containing goods, cannot be guilty of larceny by any subsequent act of his, in concealing or appropriating to his own use the article, or the con-

ALBANY,
August, 1817.

THE PEOPLE
v
ANDERSON.

tents of a trunk thus found. In *Butler's* case, in the 28th of *Eliz.* this doctrine is fully established. In that case it was decided, that the intent to steal must be when it comes into the hands or possession of the party; for if he hath the possession of it once lawfully, though he hath *animum furandi* afterwards, and carry it away, it is no larceny. (3 *Inst.* 107.) Again; Lord *Coke* lays down the law, as drawn from the year books, (3 *Inst.* 107.,) to be, that if one lose his goods, and another find them, though he convert them, *animo furandi,* to his own use, yet it is no larceny, for the first taking is lawful. So, (he says,) if one find *treasure-trove* or *waif,* or *stray,* and convert them, *ut supra,* it is no larceny, both in respect of the finding, and also for that *dominus rerum non apparet.* The same doctrine will be found in 1 *Hale* P. C. 506., and 1 *Hawk.* 208 s. 1. and 2. In 2 *East* P. C. 663., it is expressly stated, that where one finds a purse in the highway, which he takes and carries away, it is no felony, although it may be attended with all those circumstances which usually prove a taking with a felonious intent, such as denying or secreting it.

It cannot be doubted, that an indictment for a larceny must charge that the goods were *feloniously* taken, as well as *feloniously* carried away; and hence it is an established position, that if the taking is not an act of trespass, there can be no felony in carrying away the goods. (1 *Hawk.* ch. 33. *Kelyng,* 24. *Dalton,* 3.)

There can be no trespass in taking a chattel found in the highway, and the finder has a right to keep the possession against every one but the true owner. How, then, can it be said, that a thing found *bona fide,* and of which the finder had a right to take possession, shall be deemed to be taken feloniously, in consequence of a subsequent conversion, by denying and secreting it, with an intention to appropriate it to the use of the finder?

It was urged, on the part of the people, that the same test ought to be applied, in the case of the finding of a chattel, and its subsequent conversion to the use of the finder, to ascertain the felonious intention, as has been applied where goods, and particularly horses and carriages, have been feloniously obtained, under the pretence that the person applying for, and obtaining them, would use them for a certain specified purpose, and then

has gone off with them, and converted them to his own use. On a slight examination, the cases will be found to be very dissimilar: in the latter case, there must have been an original felonious intention, and unless this can be fairly deduced from all the facts in the case, it is no felony. Where that original felonious intention exists, although the person having it has obtained the consent of the proprietor to let him have the possession for one purpose, he intended to get it for another and far different purpose; and he, therefore, never had the possession for this different and fraudulent purpose, and may be fairly said to have acquired possession feloniously. It is not so with regard to a person coming fairly into the possession, by finding. No fraud is practised on any one, in first acquiring the possession. It, therefore, never can be a question with a jury, how far forth a person who found a chattel, intended to find it for the purpose of stealing it. The very nature of the case excludes a premeditated or already formed intention to steal. That depends, as matter of fact, upon a variety of circumstances, such as the value, the facility of concealment, &c., which are matters of after consideration. Hence, we do not find a single case, in the reports of criminal trials, or in the treatises on criminal law, in which it has ever been intimated, that a person actually finding a chattel, has been held to have stolen it, from the circumstance of denial, concealment, or appropriation; nor from the happening of any of those facts which, in reference to the taking of chattels, ordinarily show a felonious intention. It is true that there are cases in which, though the party apparently had the possession of the chattel, yet the taking has been adjudged felonious. The case of a guest at a tavern, or of a gentleman's butler, who have taken the things committed to their use or care, are mentioned in the books as illustrative of the principle, that the mere naked possession for a special purpose, will not protect the party, if he take it away feloniously. So if a bailee of a bale or trunk of goods, break the bale or trunk, and take and carry away a part of the goods, with intent to steal them, it is larceny; but if he carry them to a different place than the one agreed upon, and convert the whole to his use, it is not larceny. *East* (2 C. L. 695.) observes, that this distinction seems to stand more upon positive law, not now to be questioned, than upon sound reasoning; and he adopts Lord *Hale's* reasoning, that the privity of contract is determined by the act of breaking the pack-

age, which makes him a trespasser, and that, therefore, it makes no difference whether he takes all, or a part only, of the goods after the package is broken. There can be no analogy between this case and that of the carrier who breaks the package, or opens a trunk *animo furandi*, because the finder of goods has them not in virtue of any contract, and violates none, in opening a bale or trunk.

The court believe that it would be an innovation on the criminal law, to consider this as a case of larceny ; and they, therefore, direct the prisoner to be discharged.

THOMPSON, Ch. J., dissented. The facts upon which the jury founded their verdict against the prisoner, are not before this court : nor was it necessary that they should be, for if the verdict was not warranted by the evidence, application should have been made to the court of *Oyer* and *Terminer* for a new trial. The broad question, therefore, submitted to this court, is, whether property lost in the highway can, under any circumstances, be the subject of a larceny. It was put to the jury to say, whether the prisoner formed the intention of stealing, when he first found and took the trunk, and, by their verdict, they have found, that the felonious intent accompanied the first taking. The prisoner must, therefore, be deemed to have been properly convicted, unless, by the law of the land, property lost cannot be the subject of larceny.

In most of the elementary writers on criminal law, we find this general proposition laid down, that if one lose his goods, and another find them, though he convert them, *animo furandi*, to his own use, yet it is no larceny. This, as a general rule, is undoubtedly true ; but it necessarily implies, that the finder acts *bona fide*, with an intention to take and keep the goods for the right owner when he shall be ascertained ; and when such is the object and intention with which lost goods are taken up, no subsequent felonious design will convert such taking into a larceny. That the rule is so to be understood, is very evident from the reason that is assigned for it, to wit, that the first taking was lawful ; but if the first taking was with the fraudulent intention of depriving the owner of his property, such taking cannot be said to be lawful. It is the intention with which the act is done that gives its character. For this reason, though, in general, he who has a possession of any thing on delivery by the

owner, cannot commit felony thereof; yet this must be under-stood only as applying to cases where such possession is not obtained by fraud, and with a felonious intent. For it is a well settled rule, that if the circumstances under which goods are obtained, from the owner, by delivery, were such as to warrant the conclusion, that it was done with intent to steal, such taking amounts to felony, (2 *East*, *C. L.*, 605.) As where one hires a horse on pretence of taking a journey; but, in truth, with intent to steal him, this is larceny. So, where a carrier severs part of the goods from the rest, with intent to convert them to his own use, he is guilty of larceny, for, say the books, he is as much guilty of a trespass against the virtual posses-sion of the owner, by such second taking, as if the act had been done by a mere stranger, (2 *East, C. L.* 554.) Possession, ob-tained by fraud, amounts to a tortious taking, in the same de-gree, as if taken without any delivery at all from the owner. Mr. *East,* after referring to, and stating a number of cases on this subject, (2 *East, C. L.* 693.,) lays down this general rule, that if a person obtain the goods of another, by a lawful deli-very, without fraud, although he afterwards convert them to his own use, he cannot be guilty of felony. But if such delivery be obtained by any fraud, and with intent to steal, the delivery, in fact, by the owner, will not pass the legal possession, so as to save the party from the guilt of felony.

If the obtaining of goods by delivery from the actual posses-sion of the owner, by fraud, and with intent to steal, be larceny, no good reason can be assigned why the taking of goods from the constructive possession of the owner, with the like intent, should not be deemed larceny. The owner by losing his goods is not devested of the property; and his general property draws after it the possession. So that the goods, although found, are, in judgment of law, taken from the possession of the owner. There can be no doubt that trespass might be maintained for a fraudulent taking and conversion of goods found in the high-way. No difficulty, therefore, arises from the rule laid down in the books, that every felony includes a trespass. Wherever actual possession is gained by fraudulent means, and with a fraudulent intent, the constructive possession, in judgment of law, still remains in the owner. As if A. steals goods from B. who had stolen them from C., A. may be charged with stealing them from C., the real owner, because the possession, in fact,

which B. had, being fraudulent in judgment of law, both the possession and property always continued in C. (*Hawk. P. C.* *ch.* 33. *sec.* 9.) The very definition of simple larceny is, the wrongful or fraudulent taking and carrying away by any person the mere personal goods of another. *from any place*, with the felonious intent to convert them to his (the taker's) own use, and make them his own property, without the consent of the owner, (2 *East, C. L.* 553.)

The place, therefore, where the goods are taken is immaterial. It is the fraudulent and felonious intent which constitutes the crime ; and it is worthy of observation, that where we find the rule first laid down by Lord *Coke,* (3 *Inst.* 107.) that he who finds goods lost, and converts them, *animo furandi,* is not guilty of larceny, it is accompanied with reference to *treasure-trove, waifs, strays,* and *wrecks,* which were considered, *bona vacantia,* and, by the law of nature, belonged to the first occupant or finder, (1 *Bl. Com.* 299.) The rule, probably, grew out of the notion that such goods could not be the subject of a larceny. But there can be no ground for applying any of the rules of law applicable to such property to goods lost under the circumstances of this case, where not only the property, but the constructive possession of the owner still remained unaltered by the losing. It is very evident that Mr. *East* means to confine the defence to cases where no fraudulent design accompanied the first taking, for he says (2 *East, C. L.* 665.) the finder may give in evidence, that he endeavoured to discover the true owner, and kept the goods till it might reasonably be supposed that he could not be found, or that he made known his acquisition, so that he might make himself responsible for the value in case he should be called upon by the owner, for the purpose of rebutting the implication of a *felonious taking and conversion.* If he had meant to be understood, that under no circumstances could goods lost be the subject of a larceny, it would be useless, if not absurd, to say, evidence might be received to rebut a *felonious taking ;* which, according to the argument on the part of the prisoner, did not, nor could not exist. Upon the whole, therefore, although upon the trial of the prisoner, I had some doubts upon this question; yet, from an attentive examination of the law, I am persuaded that the rule under which the prisoner claims to be discharged, has been misapplied to his case ; and that the jury having found that the

original taking of the goods was with a fraudulent and felonious intent, judgment ought to be given against the prisoner.

Prisoner discharged.