## THE PEOPLE *v.* ISAAC KAATZ.

The rule that larceny cannot be committed of goods accidentally lost, and of
which the finder really supposes that the owner cannot be ascertained, is
not applicable to cattle which have strayed from the inclosure of the owner
upon the public highway; and where cattle were found upon the public
highway, under such circumstances, and were driven by the finder to mar-
ket, with the intention of converting them to his own use, he was adjudged
guilty of larceny.

The presumption of dereliction, applicable to lost inanimate chattels, does not
apply to stray domestic animals, as to which there is always supposed to be
an *animus revertendi.*

When, on a criminal trial, the court was asked by the prisoner's counsel to
charge "that the case being one of circumstantial evidence, the jury must
acquit, unless the circumstances exclude every other reasonable hypothesis
except that of the prisoner's guilt," and the court refused so to charge, it
was held that no error was committed, it appearing that the case was not one
of circumstantial evidence alone, but that there was also direct and positive
evidence against the prisoner.

CERTIORARI to the County Sessions of Westchester county.
The defendant, together with Gottleib Milhelm and Anthony
Foist, was indicted for grand larceny in stealing eight cows,
the property of William Beaty and Lewis Morris. They
pleaded severally not guilty, and the defendant demanded a
separate trial. He was accordingly tried separately, on the
18th June, 1855, before the Hon. John W. Mills, county
judge, and the justices of the sessions. There was evi-
dence in the case, both positive and circumstantial, tending
strongly to show that the defendant and the two persons
jointly indicted with him as his confederates had taken the
cows in question (which were the property of Beaty and
Morris, as charged in the indictment), while they were on
the highway, having strayed away, during the same night,
from the pasture of the owners, and had driven them to the
city of New-York, where they had butchered and sold them.

When *George Reidinger*, a witness called by the prosecution, was on the stand, he was asked by the district attorney as follows: "Did you state, on a previous examination before the grand jury at White Plains, that Kaatz called you early in the morning, about daylight, to kill the cattle?"

This question was objected to by the counsel for the prisoner. The objection was overruled, and the prisoner's counsel excepted.

The witness answered: "No, I did not say so."

When *William Hicks*, a witness called by the prosecution, was under examination, he was asked by the district attorney as follows: "In the course of the conversation with Kaatz, did he or did he not tell you different prices at which he said he had bought the cattle of these persons?"

This was objected to by the prisoner's counsel, and the objection overruled; the prisoner's counsel excepted.

The witness then answered: "At one time he said he gave $200 for them, and at the next time he said $50 a head, and he repeated that he had paid $50 a head."

*Julia Kaatz*, a witness called by the defence, proved that Milhelm received from Kaatz $235 in paper, gold and silver.

She was then asked, by the counsel for the defence, the following question: "Do you know, from what took place at the time the money was paid, what it was paid for?"

This question was objected to by the district attorney, and the objection sustained; the prisoner's counsel excepted.

She was then asked by the counsel for the prisoner as follows: "Do you know whether Mr. Kaatz purchased any cattle that morning, and of or from whom?"

This was also objected to by the district attorney, and the objection sustained; the prisoner's counsel excepted.

The witness was then asked by the prisoner's counsel as follows: "Do you know whether Mr. Kaatz had purchased any cattle from Mr. Milhelm, the man to whom he paid the money?"

This was also objected to by the district attorney, and excluded; the prisoner's counsel excepted.

*Caroline Francke,* a witness called on the part of the defence, was asked by the prisoner's counsel as follows: " Did you lend Mr. Kaatz any money on Tuesday morning, at or before the time you saw Milhelm in his room, and, if so, what amount ?"

This was objected to by the district attorney, and the objection sustained; the prisoner's counsel excepted.

The witness was further asked as follows : " Did you lend Mr. Kaatz any portion of the money which you saw him pay to Milhelm, and, if so, what amount ?"

" Do you know whether Mr. Kaatz had in his possession, of his own money, the sum of $235, before seven or eight o'clock, or earlier, on Tuesday morning, the fifth of June ?"

Both these questions were objected to by the district attorney, and the objection sustained ; the prisoner's counsel excepted.

*Isaac Meyer,* a witness called on the part of the defence, testified that the general character of the defendant was good.

On his *cross-examination,* after stating where he had lived, and how long in each place, and that he was a butcher and drover, he was asked by the district attorney if he had a brother-in-law, and answered " Yes."

The district attorney then asked: " What is his business?"

This was objected to by the prisoner's counsel, and the objection overruled ; the prisoner's counsel excepted.

The witness then answered: " He is a butcher and cow jobber ; I am in business with him ; I mean by that a drover."

It was proved by the prosecution that the prisoner said, in the presence and hearing of Milhelm and Foist, that he purchased the cattle from them, and that they did not contradict.

The court charged the jury upon the law and facts of the case ; and, among other things, stated that he had been

requested by the prisoner's counsel to charge that if the cattle had been found astray by the accused, and he had driven them away, not knowing who the owner was, it was not larceny, even though subsequently he converted them to his own use. He could not so charge the jury, but charged the jury that if the cattle escaped from the lots where they were at pasture, and were on the highway, still the person was guilty of larceny if he drove them to the city of New-York with the intent to convert them to his own use. To which portion of the charge the counsel for the prisoner then and there excepted.

The counsel for the prisoner then requested the court to charge that the two prisoners, Foist and Milhelm, not having denied the statement made by Kaatz in their presence, that he had purchased the cattle from them, it must be regarded as confirmation of the fact. The court refused so to charge, but left it to the jury to determine that point as a question of fact on the whole testimony, if Foist and Milhelm heard and understood what Kaatz had said on that subject. To which refusal the counsel for the prisoner then and there excepted.

The counsel for the prisoner also requested the court to charge that the case being one of circumstantial evidence, the jury must acquit, unless the circumstances exclude every other reasonable hypothesis except that of prisoner's guilt. The court refused so to charge, but charged the jury that it would be so in cases entirely of circumstantial evidence; but I do not think this is a case solely of circumstantial evidence; I think there is some positive evidence and circumstances connecting Kaatz with the cows; but you are to take the whole testimony into consideration, and be satisfied from the evidence that the prisoner Kaatz was the man or one of the men who stole the cattle, or he must be acquitted. To which refusal and charge the counsel for the prisoner then and there excepted.

The jury found the prisoner guilty.

*Jonas B. Phillips*, for the defendant.

I. The court below erred in allowing the question put to Reidinger: First. Because it was leading and irrelevant; Second. Because it was in the nature of a cross-examination, with a view to the impeachment of the witness, called by the district attorney himself, to sustain the charge against the prisoner. (1. *Greenl. Ev.*, § 434.)

II. The question put to Hicks was also improperly admitted. It was leading and irrelevant.

III. The questions put to Julia Kaats should have been allowed by the court, and the court erred in excluding them. The presumption of guilt arising from the recent possession of stolen property throws upon the accused the *onus* of explaining the manner by which it was acquired. In this case, the prisoner's offer to prove the acquisition by purchase was overruled by the court, in clear violation of the established rules of law and evidence applicable to cases of this character. (1 *Greenl. Ev.*, § 11; 2 *Archb. Cr. Pl.; Waterman's Notes*, 369, 6th ed.; *Rosc. Cr. Ev.*, 18; *State* v. *Merrick*, 19 *Maine*, 398.)

IV. The same objections apply to the exclusion by the court of the questions put to Mrs. Francke. (*Supra.*)

V. The question which the district attorney was allowed to propound to Isaac Myers was improper, even upon a cross-examination, and the answer was calculated unjustly to prejudice the case against the prisoner.

VI. The court erred in refusing to charge that if the cattle had been found astray by the accused, and he had driven them away, not knowing who the owner was, it was not larceny, even though he subsequently converted them to his own use; and further erred in charging the jury that if the cattle escaped from the lots where they were at pasture, and were on the highway, still the person was guilty of larceny if he drove them away to New-York, &c. Where property is lost in the highway, and it is found by a person not knowing the owner or having means at hand by which the owner can be ascertained, the subsequent conversion

of such property by the finder to his own use does not constitute a larceny. (*Reg.* v. *Mole,* 1 *Carr. & Ker.,* 417 ; 2 *Arch. Cr. Pl.,* 387–7, 6*th ed., et seq.* ; *Porter* v. *The State, Mart. & Yerg.,* 226 ; 1 *Hawk. P. C., ch.* 31, §§ 1, 2 ; *The People* v. *Anderson,* 14 *John.,* 293 ; *Whart. Am. Cr. L.,* 400, *ed.* 1846 ; *The People* v. *Cogdell,* 1 *Hill,* 94.)

VII. The statement made by the prisoner, in the presence and hearing of the defendants Milhelm and Foist, that he had purchased the cattle from them, not having been contradicted by them, should have been regarded, under the familiar rule of law, as a confirmation by them of the fact, and the court's refusal so to charge was error, although it would have been then for the jury to determine to what weight such evidence would have been entitled. At all events, it was the right of the prisoner to have had the rule stated to the jury; and for this error he is entitled to a new trial.

VIII. It is a well established and universally recognized rule that in cases depending upon circumstantial evidence, unless the circumstances exclude every other reasonable hypothesis except that of the prisoner's guilt, he is entitled to an acquittal. The court manifestly erred in refusing to charge upon this point as requested ; and the expression of the opinion that this was not a case solely of circumstantial evidence was wrong, and an interference with the privilege of the jury. (1 *Greenl.,* 15, § 13.)

*Edward Wells* (District Attorney), for the people.

I. The questions put to the prisoner's witness, Julia Kaatz, by the prisoner's counsel, were correctly overruled : First. Because the questions sought for the declarations of the prisoner in his own behalf, after the theft was committed, and after the stolen property had been found in his possession and under his own control; Second. Because what took place in prisoner's house after the theft was committed was not necessary or proper to explain the previous facts, nor

was it a part of the facts proved against the prisoner, and so not admissible as a part of the *res gestæ.* (1 *Greenl. Ev.,* § 233.) 1. If these questions were proper, then the prisoner had the benefit of them immediately afterwards, when she was asked by prisoner's counsel to state all that took place at the time Kaatz paid the money to Milhelm, and whether she knew, from what then occurred, for what the money was paid; to which she answered, without objection from the district attorney: "I know no more about it, except the money, that he paid the money; saw no cattle." This question covered the whole ground of the question previously overruled; she told all she knew; and she was the prisoner's own sister. (2 *Graham on New Trials,* 672, 2*d ed.,* 1855.) The questions put to Mrs. Francke, and objected to, were also properly overruled on the ground of irrelevancy. It made no difference where the prisoner got the money he paid to Milhelm.

II. The charge of the judge was correct, that if the cattle escaped from the lot where they were at pasture, and were there found by the prisoner, and driven to the city of New-York with the intent to convert them to his own use, he was guilty of larceny. The rule that the *bona fide* finder of lost chattels is not guilty of larceny, though he afterwards converts them to his own use, does not apply to live domestic animals like the cows in question. In the first case, as the chattels cannot return to their former owner, he is presumed to have abandoned them; and then, by the law of nature, they again become the property of the first finder; and although by the law of society he is permitted to reassert his property, yet in favor of the liberty of the *bona fide* finder, the presumption of dereliction remains, not to vest him with the property, but to clear him from crime. (*The People* v. *Anderson,* 14 *John.,* 300.) As to what is lost property, see 30 *Law and Equity Reports,* 525. But in the case of domestic animals, the absolute property being vested in the owner, and they having the *animus revertendi,* both the property and

at least the constructive possession remain, though they should accidentally get upon the highway adjoining the lot where they were pastured. (2 *Bl. Com.*, 390; 1 *Chit. Ev.*, 314.) Taking from the constructive possession is larceny, as much as from the actual possession. (*Arch. Cr. Pl. and Ev.*, 362.) The essence of the crime of larceny consists in the felonious intent to appropriate the property, and if the prisoner drove them to New-York, from the place where they were in the road, with that intent, then the crime was complete. 1. The request of the prisoner's counsel was upon a purely abstract question of law, not applicable to any facts in the case. The cows had been shut up, the night they were stolen, in a securely inclosed field, and the gate fastened, and there was a total impossibility that they escaped, and no proof that they did; but on the contrary, the witness William Beatty testifies : " The fence was in good condition; the cattle could not get out." (1.) Under this evidence (and there is no other to this point) the jury would have no right to find that the cattle escaped; and hence, even if the judge's charge upon this point had been wrong, it is no ground for a new trial. (*Hayden* v. *Palmer*, 2 *Hill*, 206, 210; *Lyon, ex rel.*, v. *Marshall*, 11 *Barb.*, 247.)

III. The court was correct in delivering the charge that the silence of Foist and Milhelm, when Kaats said in their presence that he had purchased the cattle of them, was, as matter of law, confirmation of his statement. 1. Though their silence under such a statement (if they heard and understood it) might be evidence against them, on their trial, it cannot be evidence against the people on the trial of Kaatz. (1.) A prisoner's statements before a magistrate, when charged with the offence, are not evidence for him. (2 *Cow. & Hill's Notes to Phil. Ev.*, 156; 1 *Greenl. Ev.*, § 233.) 2. If their silence could be evidence in favor of Kaats, yet the judge properly left it to the jury, as a question of fact on the whole evidence, to say whether Foist and Milhelm had heard and understood what Kaatz had said on that sub-

The People v. Kaatz.

ject: First. Because it does not appear what, if anything, Kaats said, or whether in German or English, but merely that he identified them; Second. It is not in proof whether Foist and Milhelm heard or understood what was said. (1.) And if the judge had charged as desired, he would have had to assume those facts as proved, which he had no right to do. The request to charge was on a disputed fact, which was properly submitted to the jury, to which course no exception can be taken. (*Kelly* v. *Kelly*, 3 *Barb.*, 420, 421; *Van Gorden* v. *Jackson*, 5 *John.*, 467; *Frier* v. *Jackson*, 8 *id.*, 507; *Law* v. *Merrills*, 6 *Wend.*, 274.) (2.) As the evidence stood on this point, had the judge charged as requested, it would have been erroneous. (*Fitzgerald* v. *Alexander*, 19 *Wend.*, 404; *McMorris* v. *Simpson*, 21 *id.*, 614.) (3.) Besides this, the request to charge was upon a state of facts assumed to be positively proven and not denied; and if the judge was correct in declining to charge in that form, he was not bound to put a hypothetical case to the jury, that if they believed that Foist and Milhelm understood it, then their silence would be confirmation of the prisoner's innocence.

IV. The judge was correct in saying there was some positive evidence connecting Kaatz with the cows, and that it was not a case solely of circumstantial evidence; and as he charged that, in a case of circumstantial evidence, it must exclude every other reasonable hypothesis but that of prisoner's guilt, and as he told the jury to take the whole testimony into consideration, and be satisfied from the evidence that the prisoner Kaatz was the man, or one of the men, who stole the cattle, or he must be acquitted, a new trial should not be granted on this ground. 1. Kaatz was seen in company with Milhelm and Foist, driving the cows, at several different points: first, by the witness Peter McKeesker, at 126th-street, at two o'clock in the morning; second, by George Bingham, at 103d-street; third, by Thomas Marhem and Edward Graham, at 86th-street, at half-past two

o'clock; fourth, by John B. Brown, at Williamsburgh ferry, at five o'clock in the morning.

*By the Court,* EMOTT, J.—The principal question in this case arises upon the rule of law laid down by the court below in its charge, that if the cattle escaped from the lots where they were at pasture, and were on the highway, still the defendant was guilty of larceny if he drove them to the city of New-York with intent to convert them to his own use. This presents the question whether larceny can be committed of cattle which have accidentally broken out of an inclosure and are found in the highway by the person who abstracts them.

The rule that larceny cannot be committed of goods accidentally lost, or of waifs or estrays, was undoubtedly, as is observed by Thompson, C. J., in his dissenting opinion in *The People* v. *Anderson* (14 *John.,* 299), the result of the theory that such goods were derelict or abandoned by the owner. Hence they became *bona vacantia,* and, by the law of nature, belonged to the first finder or occupant. Waifs, goods thrown away by a thief in his flight, are expressly recognized as abandoned by the true owner, unless he was immediately in pursuit, and in effort to apprehend the thief and to reclaim his property. (1 *Conn.,* 296.) Estrays are defined to be animals found wandering and no man knoweth the owner of them; and although, by the law of England, such property is claimed for the sovereign, still, until that claim was asserted and perfected with the prescribed formalities, there was no apparent owner or possessor of the property; and therefore, as Lord Hale says (1 *P. C.,* 510), larceny cannot be committed of such things whereof no man has any determinate property. The doctrine has been applied to estrays in cases where the animals are found in the property of another, and there is no case where any such presumption of dereliction has been made as to cattle accidentally escaping from the owner's close to the highway.

The People *v.* Kaatz.

The case of inanimate goods or chattels, lost by the owner and taken up by a person finding them in the road, is widely different in this particular from that of live animals escaped from an inclosure. Inanimate chattels cannot return or be restored to the true owner without the intervention of the finder, and the law does not compel him, at his peril, to pass on and leave them in the road or place where he discovers them. His taking them into his possession, therefore, is a perfectly lawful act; and he may intend to appropriate such articles to his own use, if the owner be unknown, and there be no marks on the property to point him out. If the finder subsequently continue or determine to withhold the property from the owner after he has been ascertained, still, that does not make his first act in taking possession of such chattels felonious, or even unlawful. Although, in such a case, there may be a subsequent conversion there is no original larceny.

But domestic animals are always presumed to have *animus revertendi;* and the fact that they have broken out of an inclosure, or are found at large in the highway, does not give any person meeting them a right to presume that the owner has lost them, and has no expectation of finding or reclaiming his property, as in the case of money or a pocket-book, or the like, accidentally dropped.

Besides, the doctrine we are considering is applied invariably with another qualification, which can hardly be supposed in such a case as the one at bar. The circumstances must at least be such as not to exclude the supposition of good faith in the taker of the property. Lord Hale (1 *P. C.*, 506), after giving several cases and instances to illustrate the principle, lays down the rule that the taking of waif, estray or the like, must be when the party really believes them to be such, and does not attempt to color a felonious taking ; and that the pretence of finding will not excuse one who takes goods with an unlawful intent from a place where they either lawfully or ordinarily may be. In the

recent English decisions the rule has been thus explained and applied, and the excuse of finding property is not allowed to prevent a conviction for larceny, unless the prisoner could really and honestly have believed that the property was lost and given up by the owner, and there were no apparent means of finding who that owner was. The rule was thus laid down by Baron Hullock, in 1 *Lewin* (*p.* 195), in reference to the taking of a horse straying on the highway, and by Cresswell, J., in a case where a man was convicted of larceny for taking sheep which he found in the road (*MS. case, cited in* 2 *Russ. on Cr.*, 12); and in a recent case, reported in 2 *Car & Kir.* (*p.* 839), Baron Parke thus states the result of the authorities: "The rule of law is, that if a man find goods that have been lost, or are reasonably supposed by him to have been actually lost, and appropriates them with intent to take the entire dominion over them, really believing when he takes them that the owner cannot be found, it is not larceny; but if he has taken them with like intent, though lost or reasonably supposed to be lost, but reasonably believing that the owner can be found, it is larceny."

The American cases must be interpreted in the same way. *The People* v. *Anderson* (14 *John.*, 294), which is the leading case in our courts, was a case where the property, a trunk and its contents, was lost, that is, it had accidentally got out of the possession of the owner. He was ignorant where it was, had no apparent means of finding or recovering it, it was without any marks of his ownership, and he might be supposed to have temporarily, if not finally, abandoned the property and the hope of its return. The case is not an authority for extending the principle beyond cases where the property taken was, in a just sense, lost, and the party taking it really its finder. And a farther limitation is that the defendant must, or at least might, have believed, when he took the property, that it was lost and derelict, and there must be no means of indicating or discovering the owner apparent about the property.

The People *v.* Kaatz.

Cattle escaping from an inclosure, and wandering on the highway, are not within either condition. They cannot, indeed, be said to be lost, to have become undiscoverable, or to be abandoned by the owner. They may and probably will return, or, if not, they may be tracked and recovered, and cannot be assimilated to an inanimate chattel dropped or mislaid. Such a chattel, in that case, is not in the possession of any one, and, if not taken by some finder, will be destroyed, and come to no one's hands. The owner of these escaped cattle was still constructively in possession of them, and could have his action at once for any unlawful interference with that possession. Again, property which has such natural marks as cattle or live animals can never be considered as having no mark or sign about them by which their owner could be discovered or recognized, as may be the case with money, which has no earmark, or chattels which may be like a thousand others. No taking of live animals out of the highway, with intent to appropriate the entire dominion of them, can, therefore, be presumed or supposed to have been in good faith. The charge of the court below, on this point, was correct; and we have no doubt that there may be a conviction for a larceny in taking cattle or live animals which have escaped from an inclosure into a road.

The court was right in refusing to charge that the case being one of circumstantial evidence the jury must acquit, unless the circumstances excluded any other hypothesis except that of the prisoner's guilt, as that must necessarily have been predicated upon the assumption that the positive evidence which had been adduced wàs unworthy of credit.

The court erred, however, in rejecting the question whether the witness Julia Kaatz knew that the prisoner had purchased any cattle from Milhelm, who was seen driving the cattle in question on the night when they were stolen, and to whom the prisoner paid money the following morning. It is probable that the witness would have answered in the

negative; but the prisoner had a right to put the question and have it answered. As he had been proved to be in possession of the stolen property, it was important for him to prove, if he could, that he had obtained it by purchase.

For that error the conviction must be reversed and a new trial ordered.

Ordered accordingly.