## TRULOCK v. THE STATE OF IOWA.

Where, from a view of all the equitable circumstances, it is evident that a prisoner, without fault on his part, has not had a full and impartial trial, a new trial will be ordered, although no one of those circumstances amount to error in law.

### *Error to the Henry District Court.*

AT the October term, 1854, of the Des Moines District Court, Samuel M. Trulock was indicted for the murder of Thomas B. McCormick. A trial was had at the same term, which resulted in the discharge of the jury, from their inability to agree. At the last Spring term, on motion and affidavit of defendant, the venue was changed to Henry county, in the same district. The cause being called at the last October term of said court, defendant appeared, and filed his affidavit, in proper form, for a change of venue to another judicial district, because of the prejudice of the presiding judge. This motion was overruled. An affidavit and motion were then made for a continuance, because of the absence of certain witnesses, and also because of the absence of his counsel, at a time that prevented the preparation of his defence. The state admitted that the desired witnesses, if present, would swear to the facts stated in the affidavit, and thereupon the motion was overruled. It appears that but one (and he the junior) of defendant's counsel originally employed by him, was present at the said Henry court, and defendant being unable to employ, the court appointed additional counsel to assist in the defence. A trial was had, which resulted in a verdict, finding the prisoner guilty of murder in the second degree. Motions were made in arrest of judgment, and for a new trial, for reasons which will appear in the opinion of the court, and overruled. Judgment on the verdict, sentencing the prisoner to the penitentiary for ten years. To reverse this conviction, he now brings this writ of error.

*Geo. C. Dixon* and *W. Penn. Clarke* (by appointment), for the plaintiff in error.

*D. C. Cloud,* Attorney-General, for the state.

WRIGHT, C. J.—The counsel for the prisoner, have urged several alleged errors, arising on the record before us, either of which it is claimed, must reverse the cause. We shall, however, pass upon but one. And that is, should the court below have granted the prisoner a new trial? To determine this, it becomes necessary, to refer, somewhat in detail, to the motion made therefor in the court below. This motion was made on substantially the following grounds. Defendant filed his affidavit setting forth that for six months previous he had been sick, and for most of the time confined to his house; that upon consultation with his counsel, he had concluded he must obtain a change of venue to another judicial district, in order to secure a fair and impartial trial, and that his counsel informed him, and he verily believed, that upon making the proper affidavit, the venue would be changed; that he had expended all his means in the payment of his counsel; that but one of them continued in his defence, after the venue had been changed; that sick and feeble, and with his mind so confused and excited, that he was unable to attend to the most ordinary business, he came to that court; that the overruling of the application for a change of venue, took him by surprise; that but one of his original counsel remaining, he had to depend upon the assistance of appointed counsel, who was a stranger to, and unacquainted with his cause; that thus circumstanced, he attempted to prepare for trial, but that because of his sickness and the excited state of his mind, he could not recollect the names of his witnesses, nor what he expected to prove by them, and that many important items of testimony were thus omitted to his prejudice. He then refers to his former affidavit for a continuance, and to the fact he had there omitted to refer to, the absence of several witnesses material to his defence, because of his surprise in being refused a change

of venue, and the condition of his mind, from his feeble state of health; and that these witnesses were subpœnaed, but had failed to attend. He then proceeds to detail the substance of the testimony of these absent witnesses, to which it is unnecessary to refer, further than to say, that he swears to its materiality, founded on his own belief and the advice of counsel. He also says that on another trial, he could impeach the testimony of a certain material witness for the state, by persons whose names he gives, as also what they will swear. He also states that he was entirely and completely taken by surprise by the testimony of a certain Mrs. Mozena, whose testimony on the previous trial had been his chief reliance, to show that the deceased was advancing on him, with a drawn club, at the time the blow was given, which was claimed to have caused his death; but that on the trial producing his conviction, she had testified to the reverse, and that he, the prisoner, was, in fact, advancing on the deceased, and the deceased retreating at the time. And finally, he says he can prove, if a new trial is granted, by other witnesses, that the deceased was advancing on him with a drawn club, at the time the fatal blow was struck. He also produces the affidavit of three persons, who state, that the witness, Mrs. Mozena, on the first trial, did swear that as the prisoner "stepped back, the deceased advanced toward him with a stick of wood raised," one of the affiants being of counsel for the prisoner on said former trial. He also produces the affidavit of his son (who was named as an absent witness in the affidavit for a continuance, and whose testimony was, as already stated, in that way before the jury), who states that the deceased was advancing on his father with a drawn club, at the time he was struck; that the deceased raised his club first, and that the difficulty or affray all occurred so quick, that his father had no time to escape; and that the reason of his not being at the trial was, that his mother and three of his brothers and sisters were sick, and that there was no person to leave them with, except one small brother; that being some thirty miles distant, it was impossible for him to leave home, after he had received

Trulock v. The State of Iowa.

the message requiring his attendance. The record also tends
to show, that " on the trial, a large heavy stick or bludgeon
was introduced and exhibited before the jury, as the one
used by the defendant in giving the fatal blow, and was
commented upon, but not identified." We say that the rec-
ord tends to show this, for it is difficult to say, from the very
confused record, whether the language above quoted, is part
of the matter contained in the motion for a new trial, or is
set forth in the bill of exceptions as a fact that actually
occurred.

The question that we are now to determine is, whether,
under the circumstances, the court below erred in refusing a
new trial ; or whether, without fault or negligence on his
part, the prisoner has had that fair and impartial trial,
which is guarantied to him by law. We have partially ex-
amined all the circumstances, and have come to the conclu-
sion, that such new trial should have been granted ; the
most prominent reasons for which are these : In coming to
this conclusion, we give no weight to those matters stated in
the affidavit of defendant, which are not fairly and legiti-
mately sustained by the statements of other persons, and by
the record. With this preliminary remark, let us look at
the circumstances. First. Defendant was refused a change
of venue ; and while a majority of the court cannot say,
that the court below so far abused the discretion reposed in
it by the Code, in refusing the change of venue, as to
amount to error, yet we can well conceive that any person
might, with much degree of confidence, have relied upon
obtaining such change, and that the refusal thereof, would
almost necessarily take him by surprise. It is said, that
ignorance of the law excuseth no man, and that the pris-
oner cannot claim protection, because he acted upon a mis-
taken view of what the court would hold on this question.
But this rule should not be applied with its full rigor, with-
out reference to the character of the question involved, or
the circumstances under which the ruling was made. Such
refusal should, at least, have weight, as an equitable con-
sideration, in determining this question.

In the second place, it is a matter of doubt in the mind of at least one member of the court, whether the prisoner was not entitled to the presence of his witnesses, and whether the state could, by admitting that the absent witnesses, if present, would state the facts set forth in the affidavit for a continuance, compel him to go to trial. This practice is found in our Code, alone in the chapter regulating civil proceedings; and there are, at least, plausible grounds for holding that it does not apply to criminal trials. The prisoner, by the constitution, has a right " to compulsory process for his witnesses," and if he insists upon it, it would seem but reasonable, that such process should be made fully effectual in bringing his witnesses before the jury, that their credibility might be judged; and their testimony have weight and influence, as well from their manner and appearance, as from the agreement of such testimony with other proof. But without determining this, it is sufficient to say, that the circumstance that he was thus tried, without the presence of his witnesses, should have some weight in determining whether he should not have another trial, in order to produce said witnesses, who, it is evident, are material and important in his defence.

Again: the constitution guaranties to every person charged with crime, the assistance of counsel. The spirit of this provision would seem to include, not only the assistance of some person learned in the law, but that he should be appointed at such a time, as that he could truly be of aid and assistance to the accused. In this case, it appears, and is not controverted, that two of the counsel originally employed by the prisoner, were absent; one only remained. Another was assigned him, and amid the hurry of refusing the change of venue, and the application for a continuance, they entered upon his defence. Whatever their energy and ability, we think, that under such circumstances, they could be but little prepared to discharge fully the onerous and delicate duties devolving upon them. On this ground, also, then, we should hesitate before we conclude the prisoner

Trulock v. The State of Iowa.

from a further hearing in a cause, which so vitally affects his liberty, and even his life.

And again : it is urged, that the prisoner was taken by surprise, by the testimony of Mrs. Mozena. The instances, in which courts have granted new trials for this cause alone, are numerous, each one depending on its own peculiar circumstances. In this case, it is shown by the sworn statements of the prisoner and three other persons, that on the first trial, the witness testified to matter which clearly tended to show, that the accused was acting in self defence; and on the last trial, it appears by the affidavit of one of the counsel, as also of the defendant, that she testified that he advanced towards the deceased, before the fatal blow was given. That this testimony was material, and on a point on which the whole defence turned, is very evident, and is not controverted. It is true, we cannot say that he was entirely without fault, in not preparing for this development, or in not breaking its effects, after it occurred; but we think it is fairly deducible, that his position was such, that he could not reasonably have foreseen or prepared to obviate it. For this cause alone, we should strongly incline to give the prisoner a future hearing, that he may have a fair and full opportunity, being forewarned, to relieve himself from the effect of a surprise, that would seem to be almost fraudulent in its character. And when taken in connection with all the other facts developed, it receives much additional weight and importance. If he was being tried before a judge, who, he believed, was prejudiced, and before whom he did not believe he could obtain a fair and impartial trial; if he was deprived of the personal attendance of important witnesses; if he was deserted by his former counsel, and had to depend, in part, upon the assistance of one who was a stranger to his defence, how embarrassing it must have been to him. to have the material witness for his justification, become his accuser, is palpable to any comprehension.

Another important consideration, is the exhibition of the club or bludgeon before the jury, as the one with which the alleged homicide was committed, without its being identified.

Trulock v. The State of Iowa.

If it clearly appeared that this was done, it would alone be ample cause for reversing this case.

Indeed, the improbability that any court would permit so flagrant an outrage on the rights of a prisoner, should, and does, lead us to doubt whether it is sufficiently shown to have been done. To say the least of it, however, it is a matter of so much doubt, that we should give the prisoner the benefit of the objection.

Without further enlarging, we conclude by saying, that did the determination of this cause, depend upon any one of the above grounds, we should not be unanimous, in reversing the judgment and ordering a new trial. When considered together, however, and viewing the case in its most equitable circumstances, we cannot believe that the prisoner has had that full, fair, and impartial trial, which is secured to him by law ; and without which, no man should suffer its penalty. There may have been negligence on his part, but we think none such as should close his mouth against complaints, or deprive him of the right of being again heard before a jury. The authorities for ordering new trials, even in appellate courts, on such general view of all the equitable circumstances, are numerous and well sustained. *Warren* v. *State*, 1 G. Greene, 110 ; *Jones, Scott & Co.* v. *Fenimore*, Ib. 134 ; *Jerry* v. *State*, 1 Blackf. 395 ; *Mahan* v. *Jane*, 2 Bibb, 33 ; *Hughes* v. *McGee*, 1 Marshall, 29 ; *Millar* v. *Field*, 3 Ib. 109 ; *Haggin* v. *Christian*, 1 Marsh. 591 ; *Jackson* v. *Warford*, 7 Wend. 62 ; 1 Archb. Cr. Pl. 177, note 1.

Judgment reversed, cause remanded, and new trial granted.