Nov. Term, 1859.

KEELY
v.
THE STATE.

such leave, cannot be deemed a part of the record of the cause.—*Lawton* v. *Swihart*, 10 Ind. R. 562.

*Per Curiam.*—The judgment is affirmed with costs.

*W. Cumback*, for the appellant.

*J. Gavin* and *O. B. Hord*, for the appellee.

## KEELY v. THE STATE.

By our statute, larceny consists in the feloniously stealing and taking away the personal goods of another. The general doctrine is, that the felonious quality consists in an intent to defraud the owner for the use and benefit of the thief; but there may be larceny without anticipated benefit to the thief. The felonious intent must exist at the time of the taking.

An application for a new trial, in order to obtain evidence, based upon the fact that the witness was a railroad hand, and the party did not know where to send for him or his deposition, for the trial had, is within the case of *Gibson* v. *The State*, 9 Ind. R. 264.

Saturday, January 31, 1860.

APPEAL from the *Marion* Court of Common Pleas.

PERKINS, J.—Prosecution in the Common Pleas for larceny. Conviction, and sentence for two years to the state prison.

The evidence was substantially as follows:

On the night of the 19th of *October*, 1859, *Keely* the appellant, and *Kerr* and *Radcliff*, were at the house of one *Josephine Hudson*, in *Indianapolis*, a house of ill-fame of the worst character. *Keely* and *Radcliff* had drank to excess. *Radcliff*, before the party proposed to leave the house, became dead drunk, so that he could not be aroused, and *Keely* and *Kerr* departed, leaving him lying senseless on the floor. About an hour afterwards *Keely* returned and again made an attempt to arouse *Radcliff* and take him away, but was still unable to accomplish his purpose. He then informed *Josephine Hudson* that he would take *Radcliff's* pocket-book and keep it till morning, when he would give it to him or his friends for him. *Josephine* objected, and tried to prevent *Keely's* taking the pocket-book·

A long struggle ensued over the body of *Radcliff*, which resulted in *Keely* obtaining the pocket-book, and in the partial awakening of *Radcliff*. *Josephine* then informed him that *Keely* had taken his money, but *Keely* denied it. Loud talk followed; several other persons were in and about the house, among them two policemen, who were attracted to the disputing parties; *Keely* denied to them all that he had the pocket-book, and started for home. The policemen followed and overtook him; he told them he had the pocket-book, and gave it to them. They thereupon threw him into jail for larceny.

By our statute, larceny consists in the feloniously stealing and taking away the personal goods of another. 2 R. S. p. 403. The felonious quality consists in an intent to defraud the owner for the use and benefit of the thief. Such is the general doctrine; but there may be larceny without anticipated benefit to the thief. To constitute larceny under the statute, the felonious intent must exist at the time of the taking. 4 Wend. Blacks. 321, note.— 2 Wat. Archb. 366, 337, note.

The case of *Norton* v. *The State*, 4 Mo. R. 461, was decided upon a statute of that state making bailees, who fraudulently converted goods bailed, &c., guilty of larceny. See, also, as to the *English* embezzlement act, 1 Wend. Blacks. 428, note 16.

In the case at bar, it is difficult to discover in the evidence, proof of a felonious intent at the taking. It would rather seem that the intent was to prevent the property from being stolen, as, if not taken by a friend, it undoubtedly would have been by others. The only evidence tending to show a felonious intent, is the denial afterwards that he had the pocket-book. But it is not unreasonable to suppose that *Keely* well perceived that if the pocket-book was returned to *Radcliff*, or given to *Josephine*, or others about the house, it would hardly escape the fate of larceny before morning, and that his best way to secure it for *Radcliff* when he should become himself, and get out of bad company, would be to deny that he had the pocket-book and hurry home with it.

Nov. Term,
1859.

How could such a denial have been serious, when he had taken the pocket-book openly, and with an announcement of the purpose with which he took it? Which act is to be regarded as most expressive of intention?

But we do not propose to decide the case upon the evidence.

The defendant applied for a new trial in order that he might obtain the evidence of *Kerr*, that he (*Keely*) had gone back at his (*Kerr's*) suggestion, to take *Radcliff's* pocket-book, *Kerr* knowing that there was money in it. *Kerr* was a railroad hand, and *Keely* did not know where to send for him or his deposition for the trial had. His application brings him within the case of *Gibson* v. *The State*, 9 Ind. R. 264.

*Per Curiam.*—The judgment is reversed. Cause remanded, &c.

*H. O'Neal*, for the appellant.

*J. E. McDonald*, Attorney General, for the state.