IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1872, IN THE FIFTY-SIXTH YEAR OF THE STATE.

---

## JENKS v. THE STATE.

CRIMINAL LAW.—*Trial.—Construction of Statute.*—The word "trial," as used in section 120, 2 G. & H. 420, is not used in its limited and restricted sense, but in a general sense, and includes all the steps taken in a criminal action from the submission of the cause to the jury to the rendition of judgment.

SAME.—In a criminal action, until a motion for a new trial which has been filed is disposed of, the cause is pending in court, and the parties are presumed to be in court.

SAME.—*Bill of Exceptions.*—In the progress of the trial of a criminal action, a bill of exceptions was prepared and presented to the judge, but was not signed or filed with the clerk during that term, but was signed and filed at the second term thereafter, that being the term at which a motion for a new trial in the cause was determined and judgment rendered.

*Held*, that the signing and filing were within the time prescribed by the statute.

SAME.—A bill of exceptions in a criminal cause cannot be signed and filed after the term at which judgment is rendered.

SAME.—*Postponement of Trial.*—While a cause was being tried on an indictment for murder, and before the defence had closed, a material and competent witness for the defendant, who had been served with process, became seriously ill and unable to appear and testify; whereupon it was agreed, in open court, between the defendant and his counsel and those engaged in the prosecution, that if the witness should be able to appear at any time before the cause was submitted to the jury, he should be allowed to testify; and if

he should not be able to appear, then the defendant should have the same right to move for a postponement of the trial that he would have if the motion had been made before the close of the defence, and with like effect. With this agreement, the parties proceeded until the rebutting evidence on the part of the State was closed, whereupon, the defendant's witness not yet being able to be present, a motion was made to postpone the trial for eight days, which motion was supported by affidavits showing the materiality of the facts expected to be proved by the witness, and that during the trial he had been suddenly taken ill and could not, without great danger, leave his house, etc.

*Held*, that it was error to refuse to postpone the trial.

APPEAL from the La Grange Circuit Court.

BUSKIRK, C. J.—The appellant was indicted, tried, convicted of murder in the first degree, and sentenced. to the State's prison for and during his life. Motions for a new trial and in arrest of judgment were made and overruled, and the appellant excepted, and the rulings on these motions are assigned for error.

Various reasons were assigned for a new trial, but the one first to be considered is the refusal of the court to continue the case upon the application of the prisoner. It will be necessary to a proper understanding of the questions arising upon the action of the court in overruling the application for a continuance, to set out the bill of exceptions, which contains the affidavits made in support of such motion, and the action of the court thereon, and which is as follows: "Be it remembered that in this cause there was no bill of exceptions signed by the judge or filed by either party until this term of the court; that the following bill of exceptions was then filed:

'The State of Indiana *v*. Stephen Jenks. In the La Grange Circuit Court, December Special Term, 1870.

'Be it remembered that on the 10th judicial day of this term of the court, and before the defendant's counsel had closed his defence, they stated to the court that George Rockwell was a material and important witness for the defence, by whom they expected to prove the facts set forth in the affidavit of Mary Jenks, hereinafter set forth, and that since the opening of the defence the said Rockwell had been

Jenks *v.* The State.

taken seriously ill, and that they would ask for the delay of
the trial until the said Rockwell should so far recover from
his illness as to enable him to appear in court and testify as a
witness for and on behalf of the defendant, unless the prose-
cution would agree that if the said Rockwell should appear at
any time before the cause should be submitted to the jury,
he should be allowed to testify in said cause, and unless the
State would further agree that in case the said Rockwell
should not be able to appear in court as a witness, as afore-
said, before said cause should be ready to be submitted to
the jury, then the defendant should have the same right to
move the court for a postponement of the trial that he would
have had if the motion had been made before the close of
said defence, and with like effect; which proposal of the
defendant's counsel was accepted and agreed to by the
counsel for the State in open court; and thereupon the
defence closed, except as to the testimony of said Rockwell,
and thereupon the State introduced her rebutting evidence;
and when the rebutting evidence on the part of the State
was closed, to wit, on the 13th day of said term of said
court the defendant moved the court for a postponement of
the trial of said cause for the period of eight days, and in
support of said motion submitted to the court a subpœna
for the said George Rockwell, and the return thereon,
which subpœna and return are in these words:

"The State of Indiana, La Grange county. The State of
Indiana to the sheriff of said county greeting.

" You are hereby commanded to summon Cornelia Bige-
low, Rufus Patch, Stephen M. Conley, Nat Cone, Lyman
M. Abbott, and George Rockwell to appear before the judge
of the La Grange Circuit Court on the first day of a special
term, to be held at the court-house in La Grange, on the 12th
day of December, 1870, to testify in an action wherein the
State of Indiana is plaintiff and Stephen Jenks is defendant,
on behalf of the defendant, and return this summons.

"Witness the clerk of said court this 24th day of Novem-
ber, 1870.                    JOHN H. RERICK, Clerk L. C.

"Served this instant on the within named Cornelia Bige-low, Rufus Patch, Lewis M. Abbott, and George F. Rockwell, by reading same to them, and on the within named Stephen M. Conley by leaving a true copy of same at his last usual place of residence. The within named Nat Cone not found.

"JAMES M. MARKS, Sheriff.

"December 10th, 1870."

'And the affidavit of Mary Jenks in these words:

"State of Indiana *v.* Stephen Jenks. In the La Grange Circuit Court, November Sp. Term, 1870.

"Personally came into open court Mary Jenks, who, upon her oath, says that she is the sister of the defendant; that George Rockwell is, as she believes, a material witness for the defence; that he is a physician, who has resided in Ontario, in said county of La Grange, where the deceased Mallow and the defendant resided, and where the shooting took place; that he was well and intimately acquainted with the defendant at the time of said shooting, and had been so acquainted with him for some three years prior thereto; that he had been, for more than two years prior to said shooting, the physician of the defendant, and as such had prescribed from time to time for the defendant during said period; that said Rockwell has told, on two occasions, once in August, 1870, and again about the 19th inst. (November) that the defendant had been, in the opinion of said Rockwell, ever since he, the said Rockwell, had lived in Ontario, insane; that she believes said fact can be proven by the said Rock-well. She further says that she believes that it can be proven by said Rockwell that the defendant, for a period of more than two years, was suffering at times from severe headache; that he frequently complained of a pain in his forehead; that he was, during said period, moody and depressed; that he be-lieved, without cause, that his neighbors and others, such men as John B. Howe, Samuel P. Williams, and others, who did not know him, were combined against him for the purpose of injuring him; that the belief as to said conspiring was false, and not founded upon any process of reasoning; that he

also believed that he was enabled by superhuman power to read men's thoughts; that he, defendant, stated to Rockwell, on the day of the shooting, and within twenty-five minutes of the time at which Mallow was killed, that he shot him because he was compelled to shoot him; that God had required him to do it. Said affiant further says that she believes said facts to be true; that the said Rockwell has, as she believes, been duly subpœnaed to attend this court as a witness; that he is not now in attendance, but is, and has been, ever since the defence began, confined to his house by sickness; that he cannot now leave his house without danger. She further states that she is informed and believes that the said Rockwell will be able in the course of five or six days to be present in court, and testify. She further says that she has personally seen and talked with said witness, and knows that he is not absent through the advice, consent, or connivance of the defendant, nor through the advice and consent of others with the defendant's knowledge, or by his consent. She further says that she believes the defendant to be now insane, and therefore she makes this affidavit on his behalf. MARY JENKS.

"Subscribed and sworn to in open court, this 26th day of December, 1870. JNO. H. RERICK, Clerk."

'And the affidavit of Avery A. Shelden, in these words:

"State of Indiana *v.* Stephen Jenks. In the La Grange Circuit Court, Special December Term, 1870.

"Personally appeared in open court Avery A. Shelden, and upon his oath says, that George Rockwell, mentioned in the affidavit of Mary Jenks, is, he believes, unable to attend this court; that he went for him to-day with a suitable conveyance; that said Rockwell, being a physician, says that he is willing to attend this court, but is, from sickness, unable to attend court without endangering his life.

"A. SHELDEN.

"Subscribed and sworn to before me in open court, this 26th day of December, 1870. JOHN H. RERICK, Clerk."

'Also, the affidavit of J. D. Farrall, in these words:

"State of Indiana *v*. Stephen Jenks. In the La Grange Circuit Court, November Special Term, 1870.

"Personally appeared in open court Joseph D. Farrall, and upon oath says, that he and John Morris are the attorneys of the defendant; that at the time the trial of this cause was commenced, he was informed and believed that George Rockwell, the person mentioned in the affidavit of Mary Jenks, was then in usual health; that he knew he was a material witness for the defendant, and had him duly subpœnaed; that since the trial began, as he is informed and believes, the said Rockwell was suddenly taken ill, and has been ever since confined to his house; that he cannot, without imminent danger, leave his house or attend this court as a witness; that this affiant, from personal conversation with said Rockwell, believes that the facts as set forth in the affidavit of said Mary Jenks can be proven by said Rockwell.

"J. D. FARRALL.

"Subscribed and sworn to in open court, this 26th day of December, 1870.          JNO. H. RERICK, Clerk."

'And the affidavit of John Morris, in these words:

"State of Indiana *v*. Stephen Jenks. In the La Grange Circuit Court, November Special Term, 1870.

"Personally appeared in open court John Morris, one of the attorneys for said defendant, who upon his oath says, that at the commencement of this trial he was informed that George Rockwell, the person mentioned in the affidavit of Mary Jenks, would be present during the trial of said cause as a witness for and on behalf of the defendant; that he understood he had been duly subpœnaed as a witness, and that, as he was then informed, he was well and able to attend; that had he known that said Rockwell would not be able to attend as a witness, he would not have consented to go into the trial of said cause; that from the information which affiant has obtained from others, he believes that the facts as set forth in the affidavit of Mary Jenks can be proven by said Rockwell; that they are material, and that some of

the facts cannot be proven by any other witness as fully as by said Rockwell.                    JOHN MORRIS.

"Sworn to in open court, November 26th, 1870.

"JOHN H. RERICK, Clerk."

'Which motion the court overruled, and refuses to delay the trial of said cause; to which decision of the court the defendant, by counsel, at the time excepts, and prays that this his bill of exceptions may be signed and sealed, and made a part of the record; which is done accordingly.

[SEAL.]                    HIRAM S. TOUSLEY.

December 13th, 1870.' "

It is earnestly maintained by the counsel for appellee that the above bill of exceptions does not constitute a part of the record in this cause; and that, consequently, no question arising upon the refusal of the court to continue the cause is presented for our decision.    The facts are these:

The indictment was found and returned at the September term, 1870, of the La Grange Circuit Court.  There not being time to try the cause at that time, the court was adjourned until the 12th day of December, 1870.  At that time the trial was commenced.   On the 14th day of December, 1870, and before the evidence on the part of the defendant was closed, the counsel for the appellant stated in open court that George Rockwell was a material and important witness for the defendant; that he had been duly and legally summoned to attend and testify on behalf of the defendant, and had consented to do so; that he was in good health at the time when the trial commenced, but had been suddenly taken sick and was then unable to attend court by reason of such sickness; that unless the State would consent that such witness might be examined at any time before the cause was submitted to the jury, if he was able to attend court, the defendant would then make an application for a postponement of the trial; and that it was then agreed in open court that the said absent witness might be examined at any time before the cause was finally submitted to the jury; and if the witness was unable to attend, that the defendant might,

at any time before the cause was submitted to the jury, make an application for the postponement of the trial, with the same force and effect as if made at that time.   On the 27th day of December, 1870, and before the cause was submitted to the jury, the appellant moved the court to postpone the trial of the said cause for eight days; and in support of such motion, he filed the affidavits set out in the foregoing bill of exceptions.   The motion was overruled and the appellant excepted, and thereupon he presented to the judge of said court the above bill of exceptions; but the same was not signed by the judge or *filed with the* clerk of said court during the said term of court.   The motion for a new trial was not decided at said term, but was taken under advisement until the March term, 1871.

At the March term, 1871, the said motion was taken under further advisement until the September term, 1871, at which time the motion was overruled, to which ruling the appellant excepted.   During the September term, 1871, the bill of exceptions embodying the evidence and the one above set out were signed by the judge and duly filed in the clerk's office of said court.

The position assumed by the appellee is, that the bill of exceptions should have been signed by the judge and filed with the clerk during the term at which the trial was had; and in support of this position, he refers us to section 120 of the criminal code (2 G. & H. 420), which reads as follows:

"Sec. 120. All bills of exception in a criminal prosecution must be made out and presented to the judge at the time of the trial, or within such time thereafter during the term, as the court may allow, signed by the judge and filed by the clerk.   The exception must be taken at the time of the decision."

We will state the position of the appellant, in the language of his counsel, as stated in his brief, and which is as follows:

"It may be questionable whether the language of the section quoted requires the bill of exceptions to be signed at the trial; it may, consistently with the language, be plausi-

Jenks *v.* The State.

bly argued, at least, that it is only necessary to make it out and present it at the trial. Be this as it may, I think, upon examination, that it is quite clear, from the record, that the bill of exceptions was, within the meaning of this section, signed at the trial.

"What does the phrase, 'at the time of the trial,' mean? The preposition 'at' primarily signifies near to, about, co-existent with, etc. It is very commonly used, however, as in the above section, in the sense of 'during.' The bill of exceptions must be made out during the time of the trial. The word 'trial' has in the law and in legal language, a general and restricted meaning. In its general sense, it means the investigation and decision of a matter in issue between parties before a competent tribunal. Burrill Law Dict. In its restricted sense, it means the investigation of the facts only. That it is used in the former and general sense in the statute, admits, I think, of no possible doubt. The practice throughout the State, ever since the adoption of the code, proves this. If it shall be taken in its restricted sense, then a bill of exceptions could not be signed after the cause was given to the jury, for the obvious reason that it would not be signed 'at the time of the trial.'

"Even a bill of exceptions, signed by the judge, and filed with the clerk, after the return of the verdict, though at the same term, would be void, and no part of the record. Now, as a matter of practice, we know that almost every bill of exceptions is made out and signed after the return of the verdict. I would hazard but little in saying that there is not a record on file in this court that shows that the bill of exceptions was signed before the verdict was returned, or, if the word trial is to be used in its limited sense, at the trial.

"If the bill of exceptions may be signed after the return of the verdict, at the same term, before judgment, it can be signed at any subsequent term, before judgment is rendered, for the clear and obvious reason that until judgment the matter in issue is not decided. That the above is the proper construction of the statute, that which has been acted upon

in the lower courts, seems very clear.    There is no decision that I have seen opposed to this view.

"The language of this court, in the case of *Noble* v. *Thompson*, 24 Ind. 346, suggests the reasonableness of the above view.   The court say: 'Whilst the cause is pending, and until the expiration of the time given, the adversary party is in court, and must guard his interests at his peril.   It seems reasonable, as tending to promote justice, that, during that period, the court might, for good cause, in term, enlarge the time first limited for filing a bill of exceptions.'

"Here the cause was pending, and the parties in court, when the bill of exceptions was signed, and agreeing to its correctness.   It was signed in term, and the motion is, I think, properly in the record."

We have, upon very mature and thoughtful consideration, come to the conclusion that the bill of exceptions is in the record.   Until the motion for the new trial was disposed of, the cause was pending in court, and the parties were presumed to be in court, and in this case they were, in point of fact, present in court.   The proceedings were *in fieri* until judgment was rendered.   We are of the opinion that the word trial, as used in the above section, was not used in its limited and restricted sense, but in a general sense, and includes all the steps taken in the cause from the submission of the cause to the jury to the rendition of judgment.   If we were to hold otherwise, then we would be compelled to hold that the bill of exceptions embodying the evidence did not constitute a part of the record; for if the word trial only applies to the investigation of the facts, then the bill of exceptions must have been signed by the judge, and filed with the clerk, at the September term, 1870, when the evidence was heard and the verdict was rendered.   There are many decisions of this court holding that the bill of exceptions in a criminal prosecution must be signed and filed during the term at which the trial was had, and that bills of exceptions filed after such term constituted no part of the record, but it will be found, upon examination of such decisions,

that in all such cases judgment had been rendered upon the verdict at the term when the investigation of the facts had taken place. We entertain no doubt that a bill of exceptions cannot be signed and filed after the term at which judgment was rendered. We do not think that the legislature intended that a defendant in a criminal prosecution should be required to prepare his bill of exceptions, embodying the evidence, and have it signed by the judge, and filed with the clerk, before his motion for a new trial was disposed of. It cannot well be done until the motions for a new trial and in arrest of judgment have been disposed of, for the bill of exceptions should show the ruling of the court on such motions and the exceptions to such rulings.

We think the section under examination should receive a liberal and beneficial construction, and not a strict, technical, and restricted one. In civil actions, where nothing but money and property are involved, the parties can have time beyond the term to prepare and have signed a bill of exceptions, but in criminal prosecutions, where liberty and life are involved, the bill must be signed and filed with the clerk during the term at which judgment is rendered. It frequently happens that there is no time to prepare a bill of exceptions, embodying the evidence, after the close of the trial; and before the final adjournment of court, which may result in an absolute denial of justice.

In the case under consideration, the appellant excepted to the ruling of the court, refusing to postpone the trial, at the time the decision was made, and presented the bill of exceptions to the judge at the term when such ruling was made. In such case, he could compel the judge, after the term, to sign the bill of exceptions. *Stewart* v. *The State*, 24 Ind. 142.

We are next required to determine whether the court erred in refusing to grant a postponement of the trial on account of the absence of Dr. Rockwell, who was prevented from attending and testifying by reason of sickness. There was no controversy, upon the trial, that the appellant had taken the life of George Mallow, for he shot him in open day,

in full view of the village of Ontario, and in the presence of several persons. Immediately after the shooting, Jenks hurriedly walked to the store of the deceased and informed the clerk that he had shot Mallow, and that he had better go and care for him. He then avowed, and has ever since asserted, that he acted in obedience to the directions of Heaven. The defence was that the appellant was insane. Nearly all the evidence introduced on the trial related to the question of the insanity of the appellant.

Was the evidence of Dr. Rockwell material and important to the appellant, and did the court err in refusing to postpone the trial, to enable him to put in evidence the testimony of Dr. Rockwell? The substance of Dr. Rockwell's testimony would have been, as appears from his affidavit in the bill of exceptions, that he was a graduate of Bellevue Hospital; that he came to Ontario some three years before the homicide; soon became acquainted with Jenks, for whom, from that time until the killing of Mallow, he occasionally prescribed; that Jenks complained of headache, sleeplessness, and uneasy sensations in the head; that he was very intimate with Jenks, talked with him as often as twice a week, and that his complaints were very frequent; that Jenks told him he was not secure in Ontario; that Dayton was opposed to him, and had poisoned his, Jenks', wife; Rockwell asked Jenks if Dayton had neglected his wife; he said, "No," that Dayton had attended her well, but had given her poison to kill her; that that was one way of getting rid of the Jenks family. The doctor swears that he could not persuade Jenks out of this delusion; that Jenks was at his store very often; that he never conversed with him but that he alluded to a combination of persons to crush him out; that he dwelt upon the conspiracy morbidly, and sincerely believed in its existence; that Jenks claimed the power of looking into men's minds, and thus knowing what they were thinking; that when they met together he knew they were talking about him, and that he could not be persuaded out of the notion, but assumed it as an existing fact; that he included in the conspiracy

Howe, Williams, Patch, Dayton, Mallow, and others. He further swears that Jenks was a sober and industrious man, and in his opinion insane, and that he had often so remarked to others. Rockwell further states, that immediately after the shooting of Mallow, Jenks came to his store and said: "Come here quick, there is trouble;" Rockwell gave no attention until he heard Jenks say, "It is a fact—I have shot Mallow;" when asked how he had shot Mallow, he pulled out his pistol and said, "This is what I done it with," or words to that effect; he further said, "Here I am, I give myself up; I want you to arrest me." When asked why he killed Mallow, he answered, "There is a set of men in this town that are trying to crush me, and it was decreed that I should leave my mark; I believe in God; it was ordained that I should leave my mark, and I have done it."

There can be no question that the evidence of Dr. Rockwell was very material and important. He had known the appellant intimately, and had prescribed for him. His testimony would not have been that of an expert merely, for he would have testified to facts within his own knowledge, besides giving his opinion upon the testimony of others as a medical expert. This is not an application for a new trial on the ground of newly-discovered evidence, and consequently the doctrine of cumulative evidence does not apply. The appellant knew of the existence of the evidence, but was deprived of it by the act of God. The appellant had, by the process of the court, and the assurance of the witness, secured the attendance of the witness so far as human instrumentalities could secure, and the witness would have been present and testified, but for an event over which neither he nor the court had control.

If it shall be said that, when the cause was called for trial, the appellant should have had his witnesses called, and if all were not present in court he should have refused to proceed with the trial, we answer that it is shown by the record that even such diligence would not have availed him. The wit-

ness, had he been in court on the first day of the trial, would have gone home at night and visited his patients just as he did, and the result would have been the same.

If the appellant had consented that Dr. Rockwell might have been absent from court, and he had voluntarily refused to attend court, a different rule would obtain. It has, however, been decided that even where the party is not entirely free from fault, the court, when great wrong and injury would otherwise be done, will, for the sake of promoting justice, grant a new trial. *Rigney* v. *Hutchins*, 9 N. H. 257; *Turner's Adm'r* v. *Booker*, 2 Dana, 334; *Peebler* v. *Ralls*, 1 Litt. 24; *Honore* v. *Murray*, 3 Dana, 31.

There was then no such negligence on the part of the appellant as should induce a court to refuse him a new trial, if otherwise entitled to it.

In the case of *Ainsworth* v. *Sessions*, 1 Root, 175, the principal witness was, through surprise or some other unaccountable cause, so disconcerted and confused that he could not be understood by court or jury. After the trial, he became composed and clear in his mind and memory. A new trial was prayed for on this ground, and granted by the court. The court say: "Where a party is deprived of his most material evidence by some unaccountable cause, as by being panic struck, or by a paralytic shock, or other affection which for that time, has deranged the recollection of the witness so that the party loses the benefit of his testimony; reason and justice require that the party should be relieved against such a misfortune, by a new trial, as much as when he is deprived of his witness by sickness or absence."

In an early anonymous case reported in 11 Mod. 2, the court say that when an unforeseen accident happens, or some sudden impediment, as sickness, etc., to a witness, and a trial is had, and a verdict is given for the plaintiff, which might have been given for the defendant, had the witness been produced, the court will grant a new trial.

In *Shillito* v. *Theed*, 6 Bing. 753, the plaintiff suffered a

nonsuit in consequence of the absence of one of his witnesses that had been duly subpœnaed, and then moved for a new trial. The motion was opposed, but the court granted a new trial. If Rockwell had been well, but detained by some accident, it would have entitled Jenks, according to the ruling in this case, to a new trial. Would not the sickness of Rockwell, for which neither he nor Jenks was responsible, detain him from the trial as absolutely and certainly as any accident could have detained him? If the latter would authorize a new trial, the former must.

In the case of *Ruggles* v. *Hall,* 14 Johns. 112, a witness for the defendant had been regularly subpœnaed, and attended at the circuit, but shortly before the case was called for trial, absented himself without the knowledge of the defendant or his attorney, and his absence was not discovered until after the jury was sworn, by which means a verdict was obtained against the defendant. In this case it was held that there was no negligence on the part of the defendant, notwithstanding the fact that, if before swearing the jury, he had had his witness called, he might and would thereby have learned that the witness was absent, and might have moved for a postponement. Such extraordinary caution is not required. All these cases are, we think, in point, though none of them is as strong as the case now presented to the court. *Warren* v. *Fuzz,* 6 Mod. 24; *South's Heirs* v. *Thomas' Heirs,* 7 T. B. Mon. 59; *Watterson* v. *Watterson,* 1 Head, 1; 1 Iowa, 515; 6 Ind. 407; 1 Blackf. 395.

In the case in 1 Iowa, Judge WRIGHT, after reviewing the whole case, says: "Viewing the case in its most equitable circumstances, we cannot believe that the prisoner has had that full, fair, and impartial trial, which is secured to him by law; and without which no man should suffer its penalty. There may have been negligence on his part, but we think none such as should close his mouth against complaints, or deprive him of the right of being again heard before a jury. The authorities for ordering new trials, even in appellate

courts, on such general view of all the equitable circumstances, are numerous and well sustained."

The cases of *Gibson* v. *The State*, 9 Ind. 264, and of *Keeley* v. *The State*, 14 Ind. 36, are very much in point, and strongly tend to show that the appellant was entitled to a new trial.

See, also, the following cases: *Fuller* v. *The State*, 1 Blackf. 63; *Driskill* v. *The State*, 7 Ind. 338; *Dutton* v. *The State*, 5 Ind. 533; *Spence* v. *The State*, 8 Blackf. 281; *Griffith* v. *The State*, 12 Ind. 548; *Lofton* v. *The State*, 14 Ind. 1.

The inconvenience of postponing the trial is pressed upon our attention by the learned counsel for the State; but such considerations should have no weight where the rights and liberty of a citizen are involved.

We are very clearly of the opinion that the court erred in refusing to postpone the trial, to enable the appellant to obtain the testimony of Dr. Rockwell.

The judgment is reversed, and the cause is remanded for a new trial; the clerk will notify the warden of the northern prison to return the prisoner to the jail of La Grange county.

*J. D. Farrall, J. Morris,* and *W. H. Withers,* for appellant.

*B. W. Hanna,* Attorney General, and *A. Ellison,* for the State.