THE PEOPLE OF THE STATE OF NEW YORK, RESPOND ENT, v. ORIN WOODWARD, APPELLANT.

*Larceny — the taking must be "lucri causa."*

To constitute the offense of larceny there must be an intent on the part of the taker to reap some advantage or benefit from the taking. (LEARNED, P. J., dissenting.)

APPEAL from a judgment of the Court of Sessions of Saratoga county convicting the defendant of grand larceny.

The evidence tended to show that the defendant took a horse

belonging to one Ambrose Jewell from the latter's stable and killed and buried it in a pit. Jewell and the defendant had been on bad terms for a long time and had had lawsuits, one of which was pending at the time the horse was taken.

*W. J. Miner, J. S. L'Amoreaux* and *H. L. Grose*, for the appellant.

*John Van Rensselaer*, district-attorney, for the People, respondent.

BOARDMAN, J.:

The court below did not properly state the legal questions before the jury. Upon the evidence it is certainly a grave question whether the act charged and proved was larceny or malicious mischief. To constitute larceny there must have been a felonious intent, *animo furandi* or *lucri causa*. The malicious killing of a horse is a misdemeanor. (Penal Code, § 654; 2 R. S., *695, and chap. 682, Laws of 1866.) The offenses are quite distinct. In either case there is a trespass. In larceny the taking must be for the purpose of converting to the use of the taker. In malicious mischief no such intent is necessary. In the present case the evidence tends to show a taking of the horse to kill him, with a sole desire to injure the owner. It was incumbent on the court then to point out to the jury the legal elements in the crime of larceny, so as to distinguish it from malicious mischief. This, we think, was not done. The jury was told, in substance, if defendant took or procured to be taken this horse, and killed or aided in killing him, he must be found guilty. (Fols. 283, 284, 296.) In no part of the charge is this language modified or qualified.

The seventh request to charge is as follows: "There must have been a felonious intent, for without such an intent there was no crime, and the felonious intent must have been formed before the taking; and that if, before the taking of the horse, the intent was to take it and kill it, the crime would not be a felony, but an offense under the statute, classed among misdemeanors under the term of malicious mischief." The defendant excepted to the refusal to charge as requested. The request to charge, the refusal to charge, and the exception are all very informal and inartificial, but sufficient, we think, to present the important point in the case.

The defendant was entitled to have the jury instructed in

substance as requested. Mr. Wharton, in his work on Criminal Law (§§ 1781–1784), has considered whether larceny can exist where there is no intent on the part of the taker to reap any advantage from the taking. He has reviewed the decisions from the case of *Rex* v. *Cabbage* (Russ. & Ry. C. C., 292), cited by the district attorney, to the time of his writing, and concluded that the qualification, " *lucri causa*," has been accepted by our courts as an unquestioned part of the common law. He says (sec. 1784) : " Thus it has been frequently held to be a misdemeanor, of the nature of malicious mischief, to kill an animal belonging to another, though it has never been held larceny so to kill and take, unless some benefit was expected by the taker." And he cites, in support of such statement, among other cases, *Commonwealth* v. *Leach* (1 Mass., 59) ; *People* v. *Smith* (5 Cow., 258) ; *Loomis* v. *Edgarton* (19 Wend., 420). The conclusion is sustained by the authorities.

It was a serious matter for the defendant whether he should be convicted of grand larceny upon facts which he claimed could only constitute malicious mischief. He had the right to have the distinction pointed out to the jury. He requested it, but it was not done. Thus the court neglected and refused to point out the essential ingredient of the crime of grand larceny, whereby the defendant may have been convicted of a felony, while the facts and the charge were equally applicable to a misdemeanor. The learned county judge very properly and fully recognized the serious importance of this question when he stayed the execution of the sentence pending an appeal.

There are various other questions presented, but it is unnecessary to consider them, since, upon the point already discussed, a new trial must be granted.

The judgment and conviction are reversed, and a new trial is granted.

BOCKES, J., concurred.

LEARNED, P. J. (dissenting) :

As the opinion of the majority of the court rests upon one alleged error, I shall examine that only.

There was evidence to justify the conclusion that the defendant took the horse wrongfully into his possession before the time when,

as the jury might have found, he and others killed it. And the question presented is whether a wrongful taking, with the intent at the time to subsequently destroy the property taken, in order to injure the owner, is larceny; or whether, on the other hand, in order to constitute larceny, the wrongful taking must be with intent to benefit the person who takes.

Grand larceny is the felonious taking and carrying away the personal property of another of the value of more than twenty-five dollars. (2 R. S., m. p. 679, § 63.) The only thing required by the definition in the respect now under consideration, is that the taking be felonious. I cannot see why it is not as felonious to take another's property, with intent to injure him, as to do the same act in order to benefit the taker. Indeed, the former is the more malicious act of the two.

The Penal Code (§ 528) has made the matter clear by saying that the intent may be "to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person." In my opinion such was the law before the enactment of that Code.

Blackstone says that "felonious" means "done *animo furandi*, or as the civil law expresses it, *lucri causa.*" (4 Bl. Com., 232, citing Inst., 4. 1. 1.) It is worth noticing that the passage thus cited by Blackstone as authority for the phrase, *lucri causa*, does not contain those words, or words similar. On the contrary, theft is, in that passage, defined as the fraudulent dealing with a thing, and nothing is said about such dealing being for the sake of gain. Another passage, however (Dig. 47, 213), seems to include in its definition, gain to the taker, "*lucri faciendi gratia.*"

But when the definition of theft is taken into the English law by Bracton, he leaves out this clause, and says only that the taking must be done "*animo furandi.*" (Bract. 150 *b.*, Twiss' ed., vol. 2, p. 508.) Lord COKE's definition, also, does not include the idea of "*lucri causa.*" (3 Inst., 107.)

Mr. Stephens, in his History of the Criminal Law, speaking on this very point, says: "To this day it is a part of the law of this country, as settled by very modern cases, that the motives which lead a man to commit theft are immaterial; and that the definition of the offense includes an intention to deprive the owner of his

property permanently." (Vol. 3, p. 132.) Again, in *Stephen's Criminal Law* (at p. 227), the author says that the act may be done "from any motive whatever," establishing this by the citation of authorities. To the same effect also is *Roscoe's Criminal Evidence* (7th ed.), 623 [644]. In a careful note to *Halloway's case* (1 Denison, 370) it is said : "Every wrongful taking without any color of right, with intent to deprive the owner wholly of his property, is larceny."

In *Bishop's Criminal Law* (vol. 2, § 846), Mr. Bishop states that the English courts seem at last to have utterly overthrown the old notion of *lucri causa*; and he cites, to show this, the language of POLLOCK, J., in *Reg.* v. *Jones* (1 Denison, 188) and the case of *Rex* v. *Cabbage* (R. & R., 292).

I may refer also to the definition in the Mirror for Magistrates, as given by Mr. Stephens in his history (vol. 3, p. 134). "Larceny is the treacherously taking away from another movable corporeal goods, against the will of him to whom they do belong, by evil getting of the possession or the use of them." And, without quoting, I may refer also to Hawkins P. C. (p. 89), where the definition of larceny says nothing of *lucri causa*. Nor do Mr. Wharton's views in American Criminal Law (§ 1781), appear to be different from those above stated.

In Wharton's Criminal Law (§ 899), however, a view of the English law is taken, which appears to differ from that of the text writers above cited; and a statement is made as to American decisions on this point, which I shall hereafter examine.

Passing from this summary of text writers, I may say that I find no decision in this State on the question. Some cases are referred to in this connection. *Loomis* v. *Edgerton* (19 Wend., 419), decides only that malicious mischief is a misdemeanor. There was in that case no taking of the property, and therefore could have been no larceny. *People* v. *Smith* (5 Cow., 258) only held that malicious mischief was a crime. The prisoner had not taken away the property, a cow, and was not indicted for larceny. *People* v. *Anderson* (14 John., 294) only held that the *bona fide* finder of a lost article was not guilty of larceny in appropriating it. None of these cases touch the present case.

If we turn to the English cases we find several in which prisoners have been held guilty of larceny who have taken property, not

*lucri causa.* *Reg.* v. *Jones* (*ut supra*), was a case where the prisoner, having received several letters belonging to, and addressed to B., destroyed one of them, in order to suppress inquiries respecting the prisoner's character. This was held larceny ; and POLLOCK, J., said : " Will it be contended that picking a man's pocket, not to make yourself rich, but to make him poor, would not be a larceny." *Rex* v. *Cabbage* (*ut supra*) was the case, often cited, where a prisoner was held guilty of larceny, who had taken a horse of the prosecutor and had backed it into a coal pit, and thus had killed it, with no motive of personal gain ; a case I may say, much like the present, except that the prisoner had more excuse for his act. In *Rex* v. *Wynn* (1 Denison, 365), the prisoner, a letter sorter in the post-office, took a letter and dropped it into the water-closet, with intent to destroy it, and to deprive the post-office authorities of their letter. There was no personal gain to the prisoner ; yet he was held guilty of larceny. See also *Reg.* v. *Hollaway*, above referred to.

In Mr. Wharton's Criminal Law, he cites, apparently to sustain a contrary doctrine, *Commonwealth* v. *Leach* (1 Mass. 59). But the case decides nothing on this point. It only holds that an indictment for poisoning a cow is within the jurisdiction of a Court of Sessions. No question as to the taking of personal property was in any way involved.

Mr. Wharton also expresses the opinion that American cases sustain the doctrine of *lucri causa.* An examination shows this opinion to be incorrect. He cites in support of this view *State* v. *Council* (1 Overton [Tenn.], 305). This held that stabbing a horse was indictable. It does not appear that there was any taking ; so the question of larceny was not involved. He also cites *Resp* v. *Teischer* (1 Dallas, 335), a case which has nothing to do with larceny, and which only holds that the malicious killing of a horse is indictable. No suggestion is made in that case that the horse was ever taken from the owner ; and nothing is said as to larceny. He also cites *State* v. *Hawkins* (8 Porter [17 Ala.], 461), which held that taking a slave, in order to set her free, was not larceny. How the question of larceny may apply to the case of a slave, we need not discuss. It is enough to say that the doctrine, for which that case is cited by Mr. Wharton, is overruled in the very State in which it was decided, in *Williams* v. *The State* (52 Ala.; 411),

hereafter referred to; and that in that last case the court did not deem it necessary even to comment on *State* v. *Hawkins*. Mr. Wharton also cites *McDaniel* v. *State* (16 Miss., 401). That was an indictment for murder. In the course of the opinion, a definition of larceny is incidentally given; but there was no attempt, or occasion, to define the crime accurately. The doctrine of *lucri causa* is overruled in Mississippi in the case, hereafter referred to, of *Hamilton* v. *State* (35 Miss., 214). These are the only cases that are referred to, for the purpose of showing that decisions in this country sustain the doctrine of *lucri causa*. It will be seen that only one supports the doctrine; and that one has been overruled in the State, where it was made.

On the contrary, *Hamilton* v. *The State* (*ut supra*) held that the taking away of a slave, in order to free him, was larceny. Here there could be no gain to the taker; and therefore, no act done *lucri causa;* only an intent to deprive the owner of his property. Of course this case overrules any remark to the contrary made in *McDaniel* v. *The State* (*ut supra*).

*Dignowitty* v. *The State* (17 Texas, 521), quite similar to the present, held that the taking of property with intent to destroy it was larceny.

In *Williams* v. *The State* (*ut supra*), which is a case closely in point, the court say: "no benefit to the guilty agent may be sought, but only injury to the owner." They hold that the intent need not be gain to the taker; and therefore, in fact, they overrule *State* v. *Hawkins* (*ut supra*), if that case held otherwise.

The same doctrine is distinctly decided in *People* v. *Juarez* (28 Cal., 380); in *State* v. *Ryan* (12 Nevada, 401); in *Keely* v. *State* (14 Ind., 36); in *State* v. *Davis* (38 N. J., Law 176); and in *State* v. *Brown* (3 Strob., 508); in which last case the court characterized the doctrine of *State* v. *Hawkins* (*ut supra*) as "a very novel and startling proposition." We have seen that it is a proposition already overruled in the State where it was advanced.

In *United States* v. *Durkee* (McAllister, 196), it was held that, where members of a vigilance committee seized guns as weapons of defense, this was not larceny. But that act was done neither with intent to injure the owner, nor for personal gain. The case decides nothing on the point in discussion. And the courts of the

State, where it was decided, have just been shown to have overruled the doctrine of *lucri causa*. (*People* v. *Juarez, ut supra.*)

It may then, I think, be said to be established by the great weight of American authorities, with no real exception, that to constitute larceny it is not necessary that the intent of the taker should be to appropriate the property to his use; that, where the other elements exist, it is enough if the intent be to deprive the owner permanently of his property.

If, in the absence of decisions in our own State, we are not to be guided by these text books and by these decisions of other states, and of England, and are to consider the question on principle, then I think the same conclusion should follow. That there must be a taking is undoubted; that it must be wrongful and without excuse or color of right. But when these circumstances exist, what does it matter whether the motive of the person taking is to benefit himself or to injure the owner? Suppose the property is a thing highly valued by the owner; a thing which the person taking it cannot use and does not intend to use; and suppose that, out of malice, he takes it from the owner and keeps it permanently, in order to deprive the owner of it, what is this act? Not malicious mischief, because the property is not injured; certainly not a mere trespass, because it has the elements of malicious wrong doing. Is such a wrong-doer to escape because he can say: "I did not take the property *lucri causa*." Yet, on the doctrine against which I am contending, such a wrong-doer would escape altogether. He would be guilty of no malicious mischief, and if not guilty of larceny, would be only a trespasser; a conclusion which seems to me plainly incorrect.

Undoubtedly where there is no taking there is no larceny, although there may be malicious mischief; but when the property has been in fact taken with intent to deprive the owner of it permanently, it does not matter whether the thief intends to kill and eat the cow, or to kill and bury it.

In a large majority of cases the thief intends personal gain. Perhaps, for this reason the phrase *lucri causa* crept in, to mark the distinction between larceny on the one hand, and on the other hand the wrongful taking for temporary use and to return (*State* v. *Self*, 1 Bay, 242), or to use and leave. (*Rex* v. *Phillips*, 2 East Pl., 662.) It might have been intended to note the fact that, in

cases like these, there was no permanent appropriation. But, as I think, the phrase was misused, or the distinction was incorrect, when it was thought that a wrongful taking with intent to destroy in order to injure the owner was not larceny.

I think it incorrect to call such an act as that of the defendant merely malicious mischief; because that is a crime which may be committed without any wrongful taking of the property. On the other hand, the taking is of the very essence of larceny. When we find that circumstance of a taking, we have only to see whether the taking was excusable, or was a mere trespass, or was larceny. It is of little consequence which of two bad and illegal motives influenced the wrong-doer, whether to profit himself or to injure the owner.

I think there was no error in the charge in this respect.

Present — LEARNED, P. J., BOARDMAN and BOCKES. JJ.

Judgment and conviction reversed, and new trial granted.